UNITED STATES of America,
Appellee,

v.

Darrell P. LAFLAM, also known
as Darrell Charbonneau,
Defendant–Appellant.

Docket No. 03–1549.

United States Court of Appeals,
Second Circuit.

Argued: May 17, 2004.

Decided: May 25, 2004.

Kerry B. DeWolfe, Rubin, Kidney, Myer & DeWolf, Barre, VT., for Defendant–Appellant.

Nancy J. Waples, Assistant United States Attorney for the District of Vermont (Peter W. Hall, United States Attorney, David V. Kirby, First Assistant United States Attorney, on the brief) Rutland, VT, for Appellee.

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the

Before: MCLAUGHLIN, STRAUB, and LAY,* Circuit Judges.

## BACKGROUND

PER CURIAM.

On November 16, 2001, the Charter One Bank in Proctor, Vermont was robbed by an individual wearing a mask, hooded jacket and brandishing what appeared to be a gun. The robber absconded with $5,085. On December 31, 2001, the Charter One Bank in West Pawlet, Vermont was robbed in a similar fashion. This time the robber absconded with $5,637.

On March 11, 2002, the appellant, Darrell LaFlam ("LaFlam") was indicted on two counts of unarmed bank robbery. The grand jury returned a superceding indictment on October 28, 2002 that added two counts of armed bank robbery and one count of attempted witness tampering.

Prior to trial, LaFlam filed a motion *in limine* seeking to exclude evidence of his uncharged drug use. The District Court (J. Garvan Murtha, *Judge*) denied the motion, finding:

> [E]vidence of drug use can establish a defendant's financial need which does provide a motive. That is particularly true here, where McCullough is anticipated to testify specifically about LaFlam's "drug debts" and his desire to obtain money to buy additional drugs. Evidence of LaFlam's drug use establishes the financial need that may, in part, have driven him to commit the crimes charged....
>
> McCullough's testimony about using drugs with LaFlam is also probative of their relationship and will explain to the jury why LaFlam was likely to confide in McCullough about his criminal plans.

Eighth Circuit, sitting by designation.

Evidence of LaFlam's drug use is undoubtedly prejudicial, but this prejudice may be minimized through a limiting instruction ... On balance, evidence of LaFlam's drug use is not more prejudicial than probative and the government will not be precluded from introducing such evidence at trial.

Evidence of LaFlam's drug use was introduced through three witnesses: Danielle McCullough, LaFlam's girlfriend and co-conspirator; the housekeeper at the motel where LaFlam and McCullough stayed after the robberies; and Wayne Curavoo, LaFlam's co-conspirator. McCullough testified that LaFlam used cocaine and marijuana and that he spent "around six hundred [dollars]" for drugs each week; that LaFlam had "drug debts"; that immediately after the first robbery she and LaFlam went to the Blue Spruce Motel and that LaFlam left for about four hours to buy drugs which they later used; that they returned to the motel the next day to buy and use cocaine; that LaFlam told McCullough that he sold drugs, but made no money from the sales because he used the drugs instead; that they were in financial trouble again before the second robbery in part because of drug debts; that after the second robbery they bought and used cocaine; and that she had not told the police about LaFlam's cocaine use when she was arrested because LaFlam had told her not to say anything or he would hurt her.

The housekeeper at the motel, Lucy Barrows, testified that the room in which LaFlam and McCullough stayed after the robbery smelled of marijuana, that the room had a "lazy susan [with a] white powder substance on it [and] little burn marks here and there," that on the second day after the robbery, she found similar paraphernalia including "white powder and a box of baking soda" on a night stand between the two beds, and that the removable bathroom mirror had burn marks on it which were not there prior to LaFlam and McCullough's stay.

Wayne Curavoo testified that LaFlam supplied him with drugs, and that LaFlam had told him that he owed his father money for past drug purchases.

LaFlam was permitted to cross-examine McCullough, Barrows and Curavoo. In doing so, he revealed several inconsistencies between McCullough's testimony and her prior statements to the police, and underscored the self-interest inherent in McCullough's and Curavoo's testimony due to their status as cooperating witnesses.

The trial concluded on February 28, 2003 when the jury convicted LaFlam on all counts. In a judgment entered August 26, 2003, the District Court sentenced LaFlam to 290 months' imprisonment, five years of supervised release, and $10,600 in restitution.

### DISCUSSION

■■■ " 'The standard of review applicable to the evidentiary rulings of the district court is abuse of discretion.' " *United States v. Schultz*, 333 F.3d 393, 415 (2d Cir.2003) (quoting *Old Chief v. United States*, 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)), *cert. denied*, —— U.S. ——, 124 S.Ct. 1051, 157 L.Ed.2d 891 (2004). " 'Unless a district court's determination of relevance is arbitrary or irrational, it will not be overturned.' " *Id.* (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir.1994)). Because the district court retains broad discretion to weigh potential prejudice against probative value, appellate courts reviewing a district court's evaluation of evidence under Federal Rule of Evidence 403 "generally 'maximiz[e] its probative value and minimiz[e] its prejudicial ef-

fect.'" *United States v. Downing,* 297 F.3d 52, 59 (2d Cir.2002) (quoting *United States v. McDermott,* 245 F.3d 133, 140 (2d Cir.2001)).

█ The Second Circuit has adopted an "inclusionary" approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity. *United States v. Edwards,* 342 F.3d 168, 176 (2d Cir.2003). To determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant. *Downing,* 297 F.3d at 58.[1]

█ The Government offered the testimony about LaFlam's drug use, not for the improper purpose of showing a propensity for criminal behavior, but rather to demonstrate a motive—to pay off existing drug debts and to purchase more drugs—to commit the charged robberies. While we have not addressed the precise question of whether evidence of drug use may be admitted to show motive for a charged bank robbery, we have affirmed the admission of other act evidence showing motive in other circumstances. *See, e.g., United States v. Rodriguez,* 53 F.3d 545, 546 (2d Cir.) (evidence of defendant's relationship with drug organization properly admitted in trial for gun possession where defendant maintained that he visited the crime scene merely to visit his children who lived

there), *cert. denied,* 516 U.S. 893, 116 S.Ct. 243, 133 L.Ed.2d 170 (1995); *United States v. Gonzalez,* 922 F.2d 1044, 1056 (2d Cir.) (cash found on defendant at arrest properly admitted to show he was a drug dealer with a motive to murder a cooperating witness), *cert. denied,* 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991); *United States v. Willoughby,* 860 F.2d 15, 24 (2d Cir.1988) (evidence of participation in uncharged robbery was relevant to show motive in conspiracy to obstruct justice), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989).

Moreover, other courts have upheld the admission of prior drug use in circumstances identical to those here. *See, e.g., United States v. Bitterman,* 320 F.3d 723, 727 (7th Cir.2003) (affirming admission of evidence of defendant's heroin use and addiction as relevant to establish his motive to commit robbery); *United States v. Miranda,* 986 F.2d 1283, 1285 (9th Cir.) (upholding the admission of evidence of defendant's $20 to $30 a day heroin habit to demonstrate motive to commit bank robbery), *cert. denied,* 508 U.S. 929, 113 S.Ct. 2393, 124 L.Ed.2d 295 (1993); *cf. United States v. Madden,* 38 F.3d 747, 751–53 (4th Cir.1994) (determining that introduction of drug use that establishes financial need properly admissible under 404(b) to show motive for committing robbery, but holding that "in this instance the government's evidence did no more than show that [defendant] was a drug user, which, absent evidence of financial need, is simply not relevant to a prosecution for bank robbery").

---

1. LaFlam argues that the other act evidence must be similar to the charged offense to be admissible. This is not the law in the Second Circuit. The requirement that the other act and the charged offense must be similar applies only where the other act evidence is offered to prove a defendant's intent or knowledge. *See United States v. Araujo,* 79 F.3d 7, 8 (2d Cir.), *cert. denied,* 519 U.S. 888, 117 S.Ct. 225, 136 L.Ed.2d 157 (1996). In such cases, absent similarity, such other act evidence is not relevant.

*United States v. Sutton,* cited by LaFlam, is distinguishable. *Sutton* did hold that the admission of prior drug use evidence to show motive for a robbery was in error. Because the evidence against the defendant was overwhelming, however, the court deemed the error harmless. *Sutton,* 41 F.3d 1257, 1260 (8th Cir.1994), *cert. denied,* 514 U.S. 1072, 115 S.Ct. 1712, 131 L.Ed.2d 572 (1995). The *Sutton* court's conclusion was compelled because the other act evidence was not relevant because "motive was not a material issue" in the case. *Id.* at 1259 ("[T]he defendant did not put his motive in issue; there was no testimony by his co-conspirators about his motive; and the facts which the government used to show motive were not also relevant to identity."). Because "[t]he government simply asked the jury to draw a raw inference about the defendant's motive from the fact that he used drugs," the court "decline[d] to approve such a tenuous link." *Id.*

 Here, by contrast, LaFlam concedes that because the identity of the bank robber was in dispute, evidence establishing that he had a motive to commit those robberies was material and relevant. LaFlam argues instead that there was insufficient evidence of his drug use to sustain its admission as relevant evidence. "[Other] act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The testimony of Danielle McCullough, Wayne Curavoo, and the motel housekeeper provided the jury with sufficient evidence to conclude that LaF-

lam used drugs and had drug debts. Indeed, McCullough testified that LaFlam purchased and used drugs after each of the two charged bank robberies. The motel housekeeper testified that there was evidence of drug use immediately after the first robbery. No greater proof was required.

The District Court determined that the other act evidence was probative of LaFlam's motive for committing the robberies, his conspiratorial relationship with McCullough and his willingness to confide in her about the details of his robbery plans. The District Court acknowledged that some prejudice would result from the introduction of the evidence, but concluded that "evidence of LaFlam's drug use is not more prejudicial than probative and the government will not be precluded from introducing such evidence at trial." Such a considered conclusion was not an abuse of discretion.

The District Court also gave a limiting instruction to the jury that reduced any potential prejudice that introduction of the uncharged other act evidence might have caused. *See Araujo,* 79 F.3d at 8 (no abuse of discretion where district court gave limiting instruction to cure any prejudice); *United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992).[2]

### CONCLUSION

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

**2.** We observe, as did the parties below, that this instruction, taken from the model federal charge without amendment, *see* 1 L. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS ¶ 5.10 (2003), would be improved by clarification of the "limited purposes" for which the other act evidence of drug use could be used. That is, the evidence of uncharged drug use was relevant only to motive and identity. Because the defense did not object to the proposed instruction, and has not raised the content of this instruction on appeal, we do not reach the issue.