10-2416-cr
United States v. Thompson

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of September, two thousand eleven.

PRESENT:
      ROGER J. MINER,
      PIERRE N. LEVAL,
      PETER W. HALL,
           *Circuit Judges*.

---

UNITED STATES OF AMERICA,
               *Appellee*,

      v.                                  No. 10-2416-cr

NIGEL OSARENKHOE and PHILBERT GORRICK,
               *Defendants*,

STAY THOMPSON, a/k/a Stay Daniels,
               *Defendant-Appellant*.

---

FOR DEFENDANT-APPELLANT:      JONATHAN EDELSTEIN, Law Office of Jonathan Edelstein, New York, New York.

FOR APPELLEE:      WILLIAM J. HARRINGTON, Assistant United States Attorney (Justin S. Weddle, Assistant United States Attorney, *of counsel*) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jones, *J.*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Stay Thompson appeals from a judgment of conviction entered on June 8, 2010, following a jury trial, in the Southern District of New York convicting her of one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and one count of money laundering in violation of 18 U.S.C. § 1957.   On appeal, Thompson contends that the district court erred (1) in admitting a document purported to be her 2000 tax return under Federal Rule of Evidence 404(b) and, (2) by refusing to charge the jury that it is permissible to minimize one's tax liability as long as one does not violate the law.   We assume the parties' familiarity with the underlying facts and procedural history of the case.

**I.      Discussion**

        A.      <u>Admission of Unsigned 2000 Tax Return</u>

With respect to the admissibility of the 2000 tax return, Thompson makes four arguments. First, Thompson argues that the government's "eve-of-trial" notification that it intended to use the 2000 tax return was not reasonable and prejudiced her ability to assemble contrary proof.   *See* Fed. R. Evid. 404(b) (requiring "reasonable notice in advance of trial").   Second, Thompson contends that the 2000 tax return was insufficiently authenticated because it was not signed.   For the first time on appeal, Thompson next argues that the tax return is not "probative" of any proper 404(b) issue.   Finally, Thompson contends that because the trial turned on issues of credibility, the error in admitting the tax return was not harmless.

2

In determining whether to admit "other act" evidence under Rule 404(b), district courts in this Circuit follow our "inclusionary approach," meaning such evidence may be admitted under Rule 404(b) "for any purpose other than to demonstrate criminal propensity." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (per curiam) (internal quotation marks omitted). In determining whether a district court properly admitted "other act" evidence, we consider "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *Id.* We review a district court's decision to admit evidence of prior bad acts under Rule 404(b) for abuse of discretion, "which we will find only if the judge acted in an arbitrary and irrational manner." *United States v. Lombardozzi*, 491 F.3d 61, 78–79 (2d Cir. 2007).

Leaving aside the issues of notice and authentication for the moment, there is no question that the 2000 tax return was admissible under Rule 404(b). It was offered for a proper purpose, that is, to provide a basis from which the jury could infer the defendant's fraudulent intent and absence of mistake in her improper receipt of adoption subsidy payments. Because Thompson denied she had knowingly defrauded New York City's Administration for Children's Services by accepting the adoption subsidy payments, evidence going to her intent and absence of mistake was relevant to the issue in dispute. In addition, the probative value of the tax return was not substantially outweighed by any prejudice to the defendant, particularly because the district court gave the jury a limiting instruction at the time the evidence was introduced.

The remaining issues to address are Thompson's arguments that the government failed to give her reasonable notice and that the tax return was not properly authenticated because it was

3

unsigned. Beginning with the reasonableness of the government's notice, the pertinent section of Rule 404(b) states that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial."

Assuming Thompson made the requisite request for notice, the government's notice that it intended to introduce the 2000 tax return was reasonable under Rule 404(b). Thompson has not demonstrated that the government was purposely withholding information from her or failed to discover the information due to its own negligence in conducting its pre-trial investigation. Rather the record reveals that after discovering the dependents listed on the 2000 tax return had never lived with Thompson or even knew who she was, the government informed Thompson within hours of making that discovery on July 31, 2009. *See United States v. Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (holding that notice was reasonable where government provided defendant documents the very day it obtained them). Furthermore, the government did not move to admit the tax return until August 6, 2009, giving Thompson more than five days to prepare. Thompson has not indicated why the efforts she argues she would have made had she had more time to prepare—namely, locating her filed 2000 tax return or subpoenaing her co-workers to testify about the Turbo Tax demonstration—required more than five days to accomplish; indeed, the defense never requested an adjournment to undertake those steps. *Id.* (finding significant the defendant's failure to "seek a continuance or other postponement to study the documents.") Thompson, therefore, has not established that she was prejudiced by the timing of the government's notice.

Thompson's argument that the 2000 tax return was never properly authenticated also fails. Under Rule 901(b)(4), a document can be duly authenticated, and thus attributable to Thompson,

4

based on "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." As we have stated, "[w]ith respect to a document attributed to the defendant, the prosecution need only provide a rational basis from which the jury could infer that the document did, in fact, belong to him." *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990). Because the tax return appeared to be Thompson's personal federal tax return on its face and it was located in her possessions among other financial documents, including her tax returns from other years that she did not dispute were hers, it was properly attributed to Thompson, and the district court did not err in admitting it.

B.    Jury Instruction on Limiting Tax Liability

Thompson contends that it was error for the district court to refuse to charge the jury that there is nothing wrong or unlawful about the "mere act of minimizing one's tax liability." Thompson believes such an instruction was necessary due to the government's cross-examination, which focused on her low tax liability relative to her reported income.

We review *de novo* a claim of error with respect to jury instructions, reversing "where, viewing the charge as a whole, there was a prejudicial error." *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted). The defendant "bears the burden of showing both that the jury instruction [s]he requested 'accurately represented the law in every respect and that, viewing as a whole the charge actually given, [s]he was prejudiced.'" *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (quoting *United States v. Abelis*, 146 F.3d 73, 82 (2d Cir. 1998).

In seeking the requested jury instruction, Thompson never presented the court with any specific language, thus making it difficult to assess the legal "correctness" of her proposed charge.

5

Instead, she pointed the court to two cases: *Commissioner v. Dyer*, 74 F.2d 685 (2d Cir. 1935) and *Estate of Rolin v. Commissioner*, 588 F.2d 368 (2d Cir. 1978), which Thompson contended required the court to charge the jury "to the effect that it is legally permissible to minimize one's tax liability so long as no specific tax laws were broken." Without delving into the "correctness" of the theoretical jury charge, Thompson's challenge fails because she cannot establish that she was prejudiced. Thompson's argument misunderstands the thrust of the government's cross examination. When eliciting testimony about her tax deductions, the government was not attacking her credibility by showing that she reduced her tax burden to almost nothing. The cross-examination attacked her credibility by suggesting to the jury that the particular deductions she claimed were fraudulent. Her proposed instruction, even if correct on the law, was not relevant to the theory underlying the government's line of questioning, and she was not prejudiced by the district court's refusal to give the instruction.

## II. Conclusion

We have considered all of Thompson's remaining arguments and conclude they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6